## A90A1333. EMPIRE SHOE COMPANY v. NICO INDUSTRIES, INC.

### (398 SE2d 440)

SOGNIER, Judge.

Empire Shoe Company, a tenant in the Healey Building in downtown Atlanta, brought suit against the building owner, Healey Building Associates, Ltd. (HBA), to recover damages allegedly resulting from delays in renovation of the building. HBA then filed a third-party complaint for indemnification and contribution against NICO Industries, Inc., HBA's renovation contractor. The trial court granted partial summary judgment to third-party defendant NICO on Empire Shoe's claims against defendant HBA for lost profits and damaged inventory and denied Empire Shoe's motion for reconsideration. Empire Shoe appeals.

The record reveals that in March 1985, appellant and HBA's predecessor executed a five-year lease with two five-year renewal options for retail space in the Healey Building to be used by appellant for a retail shoe store. HBA subsequently purchased the building and assumed the landlord's interest under the lease. As part of its plan for renovating the building, HBA negotiated an amendment to the lease whereby the parties agreed that HBA would endeavor to begin work by June 1, 1986, to substantially complete the interior work by August 1, and to achieve substantial completion of all areas affecting appellant by October 1, 1986, so that appellant could complete its tenant finish work in time for the Christmas buying season. The amendment also provided for rent abatement during the construction period and required HBA to provide safe, dry storage for appellant's inventory during the work.

Pursuant to this amendment, appellant vacated the leased premises in the summer of 1986 and appellee began work. It is undisputed that the work was not substantially complete until at least late March 1987 and that appellant did not resume retail operations until October 1, 1987. Sometime during early 1987, appellant's inventory and fixtures stored in the sub-basement sustained severe water damage. Appellant filed this action in October 1987, seeking compensatory and punitive damages for the construction delay and the damage to its goods and fixtures.

1. Although this matter is not raised by either party, we must

address the threshold question of NICO's right as a third-party defendant to assert a motion for summary judgment against appellant, the original plaintiff. A proper third-party complaint must be predicated on secondary liability to the original defendant for its liability on the main claim, not on direct liability from the third-party defendant to the original plaintiff. *Southern R. Co. v. Union Camp Corp.*, 181 Ga. App. 691, 693 (2) (353 SE2d 519) (1987). Nonetheless, "[t]he third-party defendant may assert against the plaintiff any defenses which the third-party plaintiff has to the plaintiff's claim." OCGA § 9-11-14 (a). Accord *Opatut v. Guest Pond Club*, 188 Ga. App. 478, 482 (10) (373 SE2d 372) (1988). "For the purpose of defense against plaintiff's complaint, a third party defendant is in the law suit as an adverse party to the same extent as the defendant and must act accordingly. This assures a third party defendant complete defense protection in an action where he may be liable for the judgment in favor of the plaintiff. [Cits.]" *F & D Property Co. v. Alkire*, 385 F2d 97, 100 (10th Cir. 1967). A third-party defendant is "entitled to participate to the fullest extent as though he had been originally a defendant. To the extent that he fail[s] to exercise that privilege of participation, he [does] so at his peril, for a third-party defendant is bound by the adjudication of the third-party plaintiff's liability to the plaintiff." (Footnote omitted.) *Knell v. Feltman*, 174 F2d 662, 665 (I) (DC Cir. 1949). Thus, the third-party defendant, by participating fully in the defense of the case, is entitled to a complete defense of the action and will not be prejudiced by any lack of diligence on the part of the original defendant.

Other courts have recognized that this right to assert defenses authorizes a third-party defendant to resist the plaintiff's motion for summary judgment on the same grounds as the defendant could use (*F & D Property*, supra); to move to disqualify plaintiff's counsel (*Oyster v. Bell Asbestos Mines*, 568 FSupp. 80 (ED Pa. 1983)); to move to transfer the action for lack of jurisdiction over the defendant (*Ferrigno v. Ocean Transport, Ltd.*, 188 FSupp. 179 (SDNY 1960)); and to use a defense available to the defendant to obtain dismissal of the plaintiff's complaint as to the third-party defendant even though the defendant does not raise the issue (*Lewis v. Borg-Warner Corp.*, 315 NYS2d 56 (1968)). We must consider, however, whether this right to assert defenses of the third-party plaintiff authorizes a third-party defendant to move for summary judgment against the original plaintiff on the basis that the plaintiff is not entitled to judgment against the defendant. Our research has yielded no Georgia case on point. Section 56 of the Civil Practice Act, OCGA § 9-11-56 (b), permits "[a] party against whom a claim . . . is asserted" to move "for a summary judgment in his favor as to all or any part thereof." The Georgia Supreme Court held in *Taylor v. Donaldson*, 227 Ga. 496, 498-499 (181

SE2d 340) (1971) that section 56 must be construed with section 1 of the Act (OCGA § 9-11-1), which provides that "[t]his chapter shall be construed to secure the just, speedy, and inexpensive determination of every action," and accordingly the term "claim" in section 56 should be "broadly interpreted." While our courts have evolved a rule of strict construction in favor of the party opposing summary judgment, that rule applies to our construction of the evidence, not to the scope of the statute's applicability to claims and parties. See, e.g., *Georgia Farm Bureau Mut. Ins. Co. v. Allstate Ins. Co.*, 190 Ga. App. 593, 594 (379 SE2d 619) (1989); *Watkins v. Nationwide &c. Ins. Co.*, 113 Ga. App. 801, 802 (149 SE2d 749) (1966). Accordingly, given the mandate of OCGA § 9-11-1, the broad interpretation to be given to the type of "claim" against which summary judgment may be sought, and the right of a third-party defendant to participate fully in the defense of the primary action to protect its own interests, we hold that a third-party defendant is entitled to move for summary judgment against the original plaintiff on any ground for which the original defendant would be entitled to summary judgment against the plaintiff.

2. We now address the merits of appellant's challenge to the trial court's ruling. Appellant first enumerates as error the grant of summary judgment to NICO on the claim for lost profits for the period attributable to the construction delay. In support of its summary judgment motion, NICO submitted the deposition testimony of appellant's president, Marshall Nerenbaum, who acknowledged that appellant, which was qualified as a subchapter S corporation under 26 USC § 1361 et seq., had reported losses on its income tax returns for several years prior to the period at issue, and that, like many closely held family businesses, appellant distributed its profits in the form of salaries to the employees, most of whom were family members. Nerenbaum acknowledged that the business loss claim related primarily to the salaries paid while the business was not in operation. (We note that appellant has presented a separate claim for the salary expenses, and the trial court denied summary judgment to NICO on that issue.) Appellant submitted no affidavits or other testimony in response to the motion, taking the position that NICO had not set forth a prima facie case so as to shift the burden of proof to appellant. The trial court disagreed, and awarded summary judgment to NICO because it had established that appellant had no profits in prior years and thus was not entitled to recover lost profits as a matter of law.

Ordinarily, anticipated profits are too speculative to be recovered, "but where the business has been established, has made profits and there are definite, certain and reasonable data for their ascertainment, and such profits [were] in the contemplation of the parties at the time of the contract, they may be recovered . . . even though they

can not be computed with exact mathematical certainty." *Mizell v. Spires*, 146 Ga. App. 330, 332 (2) (246 SE2d 385) (1978). However, a claimant may recover lost profits "only if the business has a proven 'track record' of profitability. The jury is not permitted to speculate as to what the allegedly lost profits might have [been]. [Cit.]" *Stern's Gallery &c. v. Corporate Property &c.*, 176 Ga. App. 586, 592 (3) (337 SE2d 29) (1985). Accord *Molly Pitcher &c. v. Central &c. R. Co.*, 149 Ga. App. 5, 12 (253 SE2d 392) (1979).

In the case at bar, we agree with the trial court's conclusion that appellant was not entitled to recover lost profits because it had no track record of profitability. Nerenbaum's testimony clearly established that appellant had no corporate profits in prior years, and appellant presented no rebuttal evidence indicating that a material question of fact remained. Contrary to appellant's contention, NICO did not have to present independent testimony but was entitled to summary judgment when the testimony of appellant's own principal revealed an absence of evidence on an essential element of the claim. *Grossberg v. Judson Gilmore Assoc.*, 196 Ga. App. 107, 109 (395 SE2d 592) (1990). Appellant's assertions in its verified complaint and interrogatory answers that it had incurred lost profits of approximately $96,000 did not suffice to rebut NICO's prima facie case because "[a]llegations, conclusory facts, and conclusions of law cannot be utilized to support or defeat motions for summary judgment. [Cits.]" *Peterson v. Midas Realty Corp.*, 160 Ga. App. 333, 335 (287 SE2d 61) (1981). See *Tri-State Systems v. Village Outlet*, 135 Ga. App. 81, 84-85 (217 SE2d 399) (1975) (claim for lost profits must be supported by specific facts and supporting data). Nor can the letter from appellant's accountant be used to create a material fact question, for, pretermitting the issue of the letter's admissibility, the accountant stated only conclusory facts with no supporting data, and also referred only to *gross* profit, which cannot be used as a basis for recovery of damages for lost profits. *Grossberg*, supra at 108-109 (2). Similarly, appellant's contention that because of the differences in methodology between tax and financial accounting, its income tax records should not be used as evidence of its lack of profitability raises no fact issue because appellant presented no financial accounting data in rebuttal.

Accordingly, once NICO presented the testimony of appellant's own principal in support of its contention that appellant had no lost profits to be recovered, the burden shifted to appellant to produce some evidence creating a genuine dispute on that issue. Since appellant failed to produce any evidence regarding past net profits, and this issue was one that could have been raised by HBA, the original defendant, the trial court properly granted summary judgment to NICO on the issue of lost profits. See *Grossberg*, supra at 109-110 (2).

3. The trial court also granted summary judgment to NICO on appellant's claim for compensation for the inventory damaged while in storage. Again, the evidence presented by NICO in support of its motion for summary judgment on this issue consisted of Nerenbaum's deposition testimony. Nerenbaum, who testified to extensive experience in the shoe retailing business, stated that the stored inventory consisted of pairs of shoes purchased between 1982 and 1986. He valued the goods purchased during 1985 and 1986 at the full wholesale purchase price because of the decline in the value of the dollar since the purchases were made, but applied a depreciation factor of $10 per pair for the older inventory. Receiving no further evidence from appellant in rebuttal, the trial court ruled in favor of NICO on the ground that the only evidence as to the value of the inventory was a record of the purchase price paid for the goods, which is insufficient to establish a claim for recovery of damages.

We disagree. Except in certain limited circumstances not present here (see *Braner v. Southern Trust Ins. Co.*, 255 Ga. 117, 120-121 (3) (335 SE2d 547) (1985)), the general rule is that an opinion as to value based solely on the cost price is inadmissible because it has no probative value. E.g., *Hoard v. Wiley*, 113 Ga. App. 328, 334 (2) (147 SE2d 782) (1966). Nonetheless, the "cost price of an item, if coupled properly with other evidence such as a showing of the condition of the item both at the time of purchase and at the time its value is in issue, may be admitted as a *element* upon which an opinion may be formed as to the item's value." Id. This court has recognized that the opinion testimony of an experienced retail proprietor regarding the value of his inventory, which he derived from the wholesale price of the goods, is admissible. *First of Ga. Ins. Co. v. Worthington*, 165 Ga. App. 303, 307-308 (5) (299 SE2d 567) (1983). Here, Nerenbaum explained the basis for his valuation of different types of inventory, which consisted of shoes that were new when he purchased them and were still in their original boxes and cases when the water damage occurred. Given that opinion evidence, although not sufficient to authorize the grant of summary judgment, can be sufficient to preclude the grant of summary judgment, *Dickson v. Dickson*, 238 Ga. 672, 674-675 (235 SE2d 479) (1977), we find that Nerenbaum's testimony had probative value and thus reverse the lower court's holding on this issue.

4. Appellant finally contends the trial court erred by denying its motion for reconsideration based on the court's failure to consider affidavits it filed two weeks after the summary judgment hearing. Appellant maintains the court abused its discretion by agreeing to allow the parties fifteen days after the hearing to file additional pleadings but then declining to consider appellant's affidavits filed within the designated time period. The hearing transcript reveals that the court allowed the parties additional time to file supplemental briefs or affi-

davits clarifying previously submitted evidence, and specifically admonished the parties not to raise new evidentiary issues. After appellant filed supplemental affidavits addressing various issues raised by the summary judgment motions, HBA moved to strike the affidavits on the ground that they presented new evidence, not clarification of previous evidence, and the court granted the motion. OCGA § 9-11-6 (d) provides that, absent an extension of time authorized by the court, opposing affidavits must be served no later than one day before the hearing on the motion. While the trial court is vested with discretion to consider affidavits not timely filed, the refusal to exercise that discretion is not error, *Williamson v. Sunshine Oil Co.*, 176 Ga. App. 661, 662 (1) (337 SE2d 441) (1985), and we find no error here, especially given that the supplemental affidavits did present new evidence in violation of the court's admonition, and again presented only conclusory statements.

*Judgment affirmed in part and reversed in part. Carley, C. J., and McMurray, P. J., concur.*

DECIDED OCTOBER 29, 1990.

---

*Lamberth, Bonapfel, Cifelli & Wilson, Jerrell P. Rosenbluth, Carter L. Stout,* for appellant.

*Drew, Eckl & Farnham, Stevan A. Miller, Haas, Bridges & Kane, Stephen R. Kane, Branch, Pike & Ganz, Caroline C. Kresky, Hurt, Richardson, Garner, Todd & Cadenhead, C. Michael Johnson,* for appellee.